IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARIA ZUKOWSKI,

    Plaintiff

v.                        CIVIL NO. 98-2211 (JAG)

ST. LUKE HOME CARE PROGRAM, et al.

    Defendants

## OPINION AND ORDER

On October 26, 1998, plaintiff Maria Zukowski (hereinafter "Zukowski") filed this action against her former employer, St. Lukes Home Care Program (hereinafter "St. Lukes"), under the Age Discrimination in Employment Act of 1967, ("ADEA"), 29 U.S.C. §§ 621 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e ("Title VII"). Specifically, Zukowski alleges that St. Lukes unlawfully discriminated against her due to her age and her national origin when it terminated her from employment on March 17, 1992. Zukowski also brings forth several supplemental state law claims.

Defendant St. Lukes filed a motion for summary judgment on May 26, 2000, (Docket No. 32), which Zukowski opposed on September 18, 2000. (Docket No. 42.) St. Lukes filed a reply to plaintiff's opposition on October 11, 2000. (Docket No. 46.)

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure, sets forth the standard for ruling on summary judgment motions: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The critical question is whether a genuine issue of material fact exists. A genuine issue exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. Morris v. Government Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994). A fact is material if it might affect the outcome of the suit under the governing law. Morrisey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995); Maldonando Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). On a motion for summary judgment, the court must view all evidence and related inferences in the light most favorable to the nonmoving party. See Springfield Terminal Ry. v. Canadian Pac. Ltd., 133 F.3d 103, 106 (1st Cir. 1997). Nonetheless, in employment discrimination cases,

3

"'where elusive concepts such as motive or intent are at issue,' [the aforementioned] standard compels summary judgment if the non-moving party 'rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" Feliciano De La Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1,5 (1st Cir. 2000)(citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). See also Súarez v. Pueblo International, Inc., 229 F.3d 49, 53 (1st Cir. 2000).

In order to aid the court in the daunting task of searching for genuine issues of material fact in the record, this district adopted Local Rule 311.12. (See, e.g., Corrada Betances v. Sea-Land Service, Inc., 248 F.3d 40, 43-44 (1st Cir. 2001); Morales v. Orssleff's EFTE, 246 F.3d 32, 33-35 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 27-28 (1st Cir. 2000). This rule, requires, in relevant part, that a party moving for summary judgment submit, in support of the motion, "a separate, short concise statement of material facts as to which the moving party contends there is no genuine issue to be tried and the basis of such contention as to each material fact, properly supported by specific reference to the record." D.P.R.R. 311.12. In turn, the rule requires that the party opposing a summary judgment motion, in this case Zukowksi, submit a "separate, short, and concise statement of the material

4

facts as to which it is contended that there exists a genuine issue to be tried, properly supported by specific references to the record." D.P.R.R. 311.12.

It is clearly established in this District that compliance with Local Rule 311.12 is critical, given that the Court will only consider the facts alleged in the aforementioned 311.12 statements when entertaining the movant's arguments. See <u>Rivera de Torres v. Telefónica de Puerto Rico</u>, 913 F.Supp. 81 (D.P.R. 1995). Defendant St. Lukes filed the requisite 311.12 statement with appropriate references to the record. On the other hand, plaintiff Zukowski has failed to fully comply with the requirements of Local Rule 311.12. In lieu of the required statement, Zukowski has filed a "reply" to the defendant's 311.12 statement, in which she mentions several of the defendant's statements which she finds objectionable and the reasons of her objections. Some of the allegations made in Zukowski's defective 311.12 statement are unsupported by references to the record, while others contain erroneous references to the same. Plaintiff's noncompliance with the requirements of Rule 311.12 has "caused the Court to waste a considerable amount of time 'ferreting through the record'". See <u>Ruiz v. Caribbean Restaurants, Inc.</u>, 54 F.Supp.2d 97, 102 (D.P.R. 1999); <u>see also</u> <u>Domínguez v. Eli Lilly & Co.</u>, 958 F.Supp. 721, 727 (D.P.R.

1997)(citing <u>Stepanishen v. Merchants Despatch Transp. Corp.</u>, 722 F.2d 922, 930-931 (1st Cir. 1983)).

In view of the aforementioned, the Court will outline the relevant facts of the case in the light most favorable to Zukowski, even though the uncontested facts in defendant St. Lukes's 311.12 statement will be deemed admitted.

## FACTUAL BACKGROUND

Defendant St. Lukes is a nonprofit organization that provides health and nursing services to elderly and disabled patients in their homes. Zukowski, who is German, was hired by St. Lukes on July 11, 1983. She occupied a temporary position as office clerk in St. Lukes's central administrative office in Ponce, until October 10, 1983, when she became a regular, indefinite term employee. (Docket No. 32, Exhibit C-1). After several months Zukowski became a billing officer, and held that position until the date of her termination from employment on March 17, 1992. (Docket No. 32, Exhibit C-1). It is undisputed that Zukowski received a copy of St. Lukes's Employee Manual[1] when she was hired, and

---

[1] St. Lukes's Employee Manual sets forth, among other things, the organization's non-discriminatory policies and the rules of conduct. It is expressly against St. Lukes's rules of conduct to engage in disorderly conduct, use improper language or engage in verbal arguments with co-workers during working hours. St. Lukes also requires its employees to maintain a good working

revised versions of the same during 1987 and 1991.

Zukowski's job performance was evaluated on a yearly basis, and her evaluations were generally good. Zukowski's best performance evaluation, dated June 1991, was prepared by her immediate supervisor at the time, Eugenia Rivera (hereinafter "Rivera"). (Docket No. 32, Exhibit C-1, p. 72). It is undisputed that Zukowski received a yearly salary increase based on her satisfactory job performance.

Defendant contends that Zukowski was involved in several interpersonal and disciplinary conflicts which ultimately resulted in her dismissal. These events took place on December 12, 1985; December 12, 1991; and, March 13, 1992.

## I. The 1985 incident:

It is undisputed that on December 12, 1985, Zukowski was involved in a conflict with co-worker Norma Montalvo (hereinafter "Montalvo"), in which Zukowski acted with disrespect and aggressiveness towards Montalvo as a result of a personal matter.[2]

---

relationship with co-workers, avoid comments, discussions and personal conflicts with other employees and to show respect to others. (Docket No. 32, Exhibit A, pgs. 4-8, translation of Employee Manual).

[2] The only reference that Zukowski makes to the December 12, 1985 incident in her scanty 311.12 statement is contained in Section II (A)(1). (Docket No. 42). Plaintiff mentions as support

(Docket No. 32, Exhibits C-1 and D). That same day, Montalvo complained to her employer about Zukowski's conduct, and an investigation was conducted by St. Lukes's Human Resources Director, Mr. Lago. (Docket No. 32, Exhibits B-4; C-1, pp. 77 and 79; Exhibit D, ¶ 8). After the investigation, a written reprimand was issued to Zukowski on December 19, 1985, advising her that if similar conduct were to occur again at the workplace she could face immediate dismissal. (Docket No. 32, Exhibits B-5; D, ¶ 8).

## II. The 1991 incident:

In December of 1991 Zukowski was again involved in a conflict with a co-worker, Claribel Colón (hereinafter "Colón").[3] Ms. Colón complained to her employer that Zukowski and another employee were spreading false rumors about an alleged romantic relationship between Colón and a married male co-worker. (Docket No. 32,

---

for her position , pages 17 and 18 of a deposition. Not only is this method of pointing to a reference inappropriate, but the only pages 17 and 18 that this Court could find after ferreting through the record are part of plaintiff's deposition and make no mention of the 1985 incident. (See Docket No. 42, Exhibits A and B).

[3] Zukowski does not dispute the 1991 incident, but rather mentions that she was not aware at the time of her suspension that she could object to the same. (See Docket No. 32, Reply to defendant's statement of uncontested facts, Section II(A)(2), in which plaintiff makes references to pages 85 and 86 of her deposition).

Exhibit D, ¶ 9). After conducting the appropriate investigation, Mr. Lago and Ms. Rodríguez, St. Lukes's Executive Director, suspended Zukowski for a two-week period on December 17, 1991, as a disciplinary measure. In the written notice of suspension, the plaintiff was again warned that if she became involved in a similar situation, she would be fired. (Docket No. 32, Exhibit B-6). Zukowski was suspended from her position from December 18, 1991 until January 2, 1992.

### III. *The 1992 incident:*

On March 13, 1992, Zukowski received a memorandum from her supervisor, Ms. Rivera, detailing her attendance schedule.[4] (Docket No. 32, Exhibits C-1, p.90; Exhibit B-7). Plaintiff admittedly became "traumatized" when she read the memo. (Docket No. 32, Exhibit C-1, p. 91).

The parties have differing versions of Zukowski's reaction to the March 1992 memo. Defendant contends that Zukowski was visibly altered, and acted disrespectfully towards her supervisor, Ms. Rivera, in front of her co-workers. In addition, defendant contends that Zukowski refused to discuss the matter privately with Ms. Rivera, when she allegedly invited her to do so. (Docket No.

---

    4   A similar memo was given to each employee under Ms. Rivera's supervision in the Billing Department.

32, Exhibit C-1, p. 94; Exhibit D, ¶ 10; Exhibit E-1 and E-2). Zukowski, on the other hand, refutes that she was agitated or spoke loudly to Ms. Rivera. (See Docket No. 42, Reply to Statement of Uncontested Facts, Section II(A)(3)-(5), in which plaintiff makes general references to pages 93 and 94 of her deposition).

It is undisputed that on March 16, 1992, Rivera reported the aforementioned incident to Mr. Lago and Ms. Rodríguez by way of a memorandum. (Docket No. 32, Exhibits B-8; D, ¶ 10). Upon receipt of Rivera's memo of March 16, Lago investigated[5] the incident and met with Rodríguez. They reviewed Zukowski's disciplinary file and decided to fire her on March 17, 1992. (Docket No. 32, Exhibit D, ¶ 11; Exhibit B-9). At the time of her discharge Zukowski was forty-seven (47) years old.

### BURDEN-SHIFTING FRAMEWORK

As previously mentioned Zukowski alleges that she was discharged by defendant St. Lukes both because of her German

---

[5] Zukowski mentions in her reply to defendant's 311.12 statement that she was never interviewed by Mr. Lago to discuss the March 1992 incident prior to her dismissal. Plaintiff, once again, fails to make specific references to the record in support her factual allegations. Nevertheless, the Court finds Zukowski's contention to be immaterial, given that defendant's never alleged that they met with Zukowski to discuss the March 1992 incident, but rather that they investigated the incident.

national origin, in violation of Title VII; and because of her age, in violation of the ADEA. Because Zukowski fails to produce direct evidence of discrimination based on national origin or age, this Court will look at the totality of the evidence guided by the three-stage burden-shifting mechanism set forth in McDonnell Douglas. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Rivera-Rodriquez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 25 (1st Cir. 2001); Feliciano De La Cruz v. El Conquistador Resort and Country Club, 218 F.3d at 5-6; Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 429 (1st Cir. 2000); Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 19(1st Cir. 1999). Under this analytical framework, plaintiff Zukowski shoulders the initial burden of establishing a *prima facie* case of both national origin and age discrimination. "In employment termination cases, a plaintiff establishes a *prima facie* case by showing that: (1) the plaintiff is within a protected class; (2) she was qualified for, and performing her job at a level that met her employer's legitimate expectations; (3) she was nevertheless dismissed; and (4) after her departure, the employer sought someone of roughly equivalent qualifications to perform substantially the same work." Feliciano De La Cruz v. El Conquistador Resort and Country Club,

11

218 F.3d at 5 (citing <u>Mulero-Rodriguez</u>, 98 F.3d at 673; <u>Lipsett v. University of Puerto Rico</u>, 864 F.2d 881, 899 (1st Cir. 1988)). <u>See also</u> <u>Suárez v. Pueblo International, Inc.</u>, 229 F.3d at 53.

Zukowski can easily establish the first three requirements of her *prima facie* case. For purpose of the ADEA claim, she was over forty at the time of her discharge; while for purpose of her national origin claim, she is German. As to the other two elements, the record shows that Zukowski was discharged even though her performance evaluations were generally good and she was both qualified for her job and meeting her employer's expectations as to her work product.

Defendant St. Lukes suggests that Zukowski failed to establish a *prima face* case given that nobody was hired to substitute her. (Docket No. 32, Exhibit D). Zukowski disagrees with defendant's representation. In her deficient 311.12 statement Zukowski asserts that co-worker Aracelis Cintrón (hereinafter "Cintrón"), a temporary employee, became a permanent employee as a result of her dismissal and assumed her duties and responsibilities.[6] Given that

---

[6] Not only has Zukowski failed to make specific references to the record in support of the contention that Cintrón assumed her responsibilities, but the scant references she makes are erroneous. Plaintiff's "Reply to Statement of Uncontested Facts," (Docket No. 42, Nos. 1-3), contains a single reference to an Exhibit A. But the attached Exhibit A is not a

12

the initial burden of establishing a prima facie case is not onerous this Court will assume, without deciding, that Zukowski has established a prima facie case of discrimination. See e.g., Texas Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981).

Once the plaintiff sets forth a *prima facie* case, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its [employment action]. . . . If the defendant carries this burden of production, the plaintiff must prove that the legitimate reasons were mere pretext for discrimination." Rivera-Rodriguez v. Frito Lay Snacks Carribbean, 265 F.3d 15, (1st Cir. 2001)(citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 253-55).

Defendant St. Lukes produced ample evidence to satisfy its limited burden of production by articulating a legitimate, non-discriminatory reason for firing Zukowski; namely, her repeated disciplinary problems amounting to insubordination. In fact, it is undisputed that prior to Zukowski's discharge, she had been forewarned on two prior occasions that disrespectful behavior towards her colleagues would not be tolerated, and that she would

---

personnel action sheet, but rather an excerpt of plaintiff's deposition, which contains no information as to Cintrón's employment history with St. Lukes, or her age. After ferreting through the record, this Court found Cintrón's personnel sheets.

13

be fired if she once again engaged in similar behavior. (Docket No. 32, Exhibit B-5 and B-6; Exhibit D, ¶¶ 12 and 13).

Once the McDonnell Douglas framework drops out of the case, the question at the summary judgment stage is whether plaintiff Zukowski has produced sufficient evidence from which a fact finder could reasonably conclude that St. Lukes's decision to terminate her was driven by discriminatory animus. See, e.g., Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000); Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 45 (1st Cir. 2002).

Zukowski's inept 311.12 statement fails the mark at this juncture of the analysis. The only proof that Zukowski sets forth in her effort to prove discrimination can be summarized as follows: (1) that sometime in 1986, co-workers Montalvo and Rivera made fun of her accent, specifically the way she pronounced the "ss" sound; (2) that on one occasion in either 1990 or 1991, Ms. Rivera said that plaintiff's pronunciation of the "ss" sounded like she was washing clothes; (3) that Ms. Rivera would refer to her as the "German" or the "Polish"; (4) that sometime in 1986 on one occasion when plaintiff was covering the switchboard plaintiff had a conflict with Ms. Rodriguez because she told plaintiff that she was not being understood when she spoke; (5) that Rivera would

14

sometimes call her "la vieja"; and, (6) that on one occasion when conversing with Rivera, Rivera asked her why she didn't resign, get food stamps, and go take care of her mother.

Even though biased comments may support an inference of pretext, the weight to be given to this kind of remarks is lessened where the remarks are "temporally remote from the date of the employment decision or . . . were not related to the employment decision in question or were made by non decision makers." Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d at 433 n.6 (citing McMillan v. Massachusetts Soc'y for the Prevention of Cruelty to Animals, 140 F.3d 288, 301 (1st Cir. 1998)). Here, Zukowski admits that several of the remarks occurred in 1986, and thus are far removed from the date of dismissal in 1992. In addition, none of the comments are even remotely related to the decisional process of firing plaintiff. These remarks are best characterized as the kind of "stray remarks that [can be] suggestive but [are] often found [to be] insufficient to prove discrimination in the absence of more meaningful evidence." Baralt v. Nationwide Mutual Insurance, Co., 252 F.3d 10, 17 (1st Cir. 2001)(citing Williams v. Raytheon Co., 220 F.3d 16, 18 (1st Cir. 2000)). See, e.g., Rivera Rodriguez v. Frito Lay Snacks Caribbean, 265 F.3d at 27 (where discriminatory remarks coupled with other evidence of discriminatory animus proved

15

sufficient to survive a summary judgment claim of wrongful termination).

Neither Title VII nor the ADEA were designed to transform courts into "super personnel departments, assessing the merits-or even the rationality-of employer's nondiscriminatory business decisions." <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 825 (1st Cir. 1991). Because the evidence in the record fails to support an inference of unlawful discrimination against Zukowski on account of her national origin or her age, summary judgment is hereby entered in favor of St. Lukes.

## CONCLUSION

In view of the aforementioned, St. Lukes's summary judgment motion (Docket No. 32) is hereby **GRANTED**. Zukowski's claims under the ADEA and Title VII are **DISMISSED WITH PREJUDICE**. The supplemental law claims are **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 10th day of May 2002.

_____
JAY A. GARCIA-GREGORY
United States District Judge